THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
FÉLIX L. MELÉNDEZ ROLÓN, Defendant and Appellant.

No. CR-71-164.        Decided May 19, 1972.

*Rubén Rivera Ramos* for appellant. *Gilberto Gierbolini, Solicitor
General,* and *Rurico E. Rivera Rivera, Assistant Solicitor
General,* for The People.

PER CURIAM: Appellant was accused and convicted of the
offense of driving a vehicle under the influence of intoxicating
liquor (§ 5-801, Vehicle and Traffic Law, 9 L.P.R.A. § 1041).
He was sentenced to pay a $200 fine. In addition, his license
was suspended for a one-year term and for an additional term
of six months for his unjustified refusal to submit himself
to one of the chemical analyses provided by law, this last
term retroactive to the date on which the license was seized.

It is assigned as error that the evidence was insufficient
and that it should have created a reasonable doubt in the
trier's mind.

The evidence for the prosecution consisted exclusively of
the testimony of policeman José A. Colón Cortés. He testified:

that on November 19, 1970, while patrolling Road No. 2 in the Vega Baja area, he observed that defendant's automobile driven by him was zigzagging for which reason he proceeded to detain him; that upon approaching the driver to ask for his license he noticed that "he smelled of intoxicating liquor"; that defendant-appellant could not find his license at first but later, while being in the patrol car, he showed it; that when he asked appellant to get out of the automobile he could hardly do it and the policeman had to open the door for him; that once out of the automobile he could not stand on his feet having to recline. The policeman kept on narrating that he told defendant-appellant about his state of intoxication and invited him to submit himself voluntarily to the blood or urine tests, to which appellant refused. Together with appellant was his brother who according to the policeman was also under the influence of intoxicating liquor. The policeman also testified that he found a bottle of Don Q rum in the automobile with about two fingers of the liquor missing. He asked them to whom did the bottle belong and they explained that they had been drinking. He did not know on the day of the trial where the bottle was inasmuch as he had forgotten it and had left it in the automobile.

Gilberto Vázquez, Physiotherapy Supervisor at the Veterans Hospital, testified as witness for the defense. He testified: "that on November 19, 1970, he saw defendant at the said hospital where he went to submit himself to a heat treatment to a knee and to a series of exercises to correct a deformity which he had as a result of a recent knee operation; that defendant was there from two to four in the afternoon; that the defendant had been walking with a walking stick for some time after the operation; that on walking he showed some inaction in the knee upon coming out of the treatment; and that at four in the afternoon he personally signed the card when defendant-appellant left the hospital.

Defendant testified that he has been a public school teacher for 15 years. On November 19, 1970, he arrived at the Veterans Hospital at about a quarter to two in the afternoon to get treatment on his leg. After receiving the treatment he was feeling worse than on previous occasions because they had increased from six to twelve pounds the weight of the weights used in the traction treatment, weights which he had to lift with his legs, and that he had exercised on a fixed bicycle. He was feeling severe pain and took two compound Darvon pills instead of one as he used to on previous occasions. He left the hospital "after four" and the policeman detained him at "about a quarter to five." On the way he picked up his brother in Vega Alta and the latter was carrying a bottle of rum in an envelope. Upon being asked if he had drunk on that day defendant said that he had not drunk because he could not drink due to the pills which he had taken. Nevertheless, he admitted that his brother had drunk. As to the zigzagging with the automobile, he said that it was possible because he had been setting the brakes with his left foot since he could not move the right one because that was the affected leg, and besides he was not acquainted with the automobile because it was borrowed. Defendant-appellant further testified that when the policeman stopped them he told the policeman whether he could not see that he had a bad leg and the policeman told him to shut up. He further said that the policeman did not tell him anything about the chemical analyses since all he told him was to shut up.

The evidence presented by the prosecuting attorney consisted of the policeman's testimony. He limited himself strictly to establishing the first observation which he made of the defendant at the time of the detention. Nor did the policeman describe defendant-appellant's conduct or behavior after his detention and while he was in his company. The evidence for the defense to the effect that defendant-appellant

had just received a painful treatment at the Veterans Hospital, that he was under pain and had difficulty upon walking, which could explain some of the observations made by the policeman and which moved him to believe that appellant was under the effect of intoxicating liquor does not fail to impress us. It is significant that defendant hardly had time to reach Vega Alta, where he was detained, inasmuch as he left the Veterans Hospital in the neighborhood of Río Piedras sometime after four and was detained in Vega Alta at a quarter to five. Normally we do not disturb the trial court's weighing of the evidence. In this case, however, we have carefully examined the witnesses' testimony and an analysis of the same moves us to conclude that defendant's guilt was not established beyond reasonable doubt. See, *People* v. *Rivera Arroyo, ante,* p. 45; *People* v. *Díaz Just,* 97 P.R.R. 56 (1969); *People* v. *Toro Rosas,* 89 P.R.R. 166 (1963).

The additional suspension of the license for a term of six months for defendant-appellant's refusal to submit himself to the chemical analyses was made retroactive to the date of its seizure, for which reason any contention regarding that suspension is academic.

The judgment appealed from will be reversed and defendant acquitted.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.